**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division**

**VICKY R. WALTON,**

    **Plaintiff,**

  **v.**                                           **ACTION NO. 4:06cv75**

**SCHOOL BOARD OF GLOUCESTER COUNTY,
HOWARD B. KISER, Superintendent,
Gloucester County Public School,
MR. A. J. MCGLOHN, JR., Board Member,
Gloucester County Public School,
MR. KEVIN M. SMITH, Board Member,
Gloucester County Public School,
MR. E. STANLEY BELVIN, JR., Board Member,
Gloucester County Public School,
MS. ANN F. BURRUSS, Board Member,
Gloucester County Public School,
MS. RONNIE COHEN, and
DR. JEAN E. PUGH, Board Member,
Gloucester County Public School,**

    **Defendants.**

### MEMORANDUM OPINION

Plaintiff Vicky R. Walton ("Walton") filed this employment discrimination action against Gloucester County Public Schools, Howard B. Kiser, and various members of the School Board of Gloucester County (collectively, "Defendants").[1]  This matter is before the court on Defendants' motion to dismiss, filed on October 26, 2006, and Walton's motion for leave to amend her complaint, filed November 6, 2006.  For the reasons set forth

---

[1] Pursuant to this court's Scheduling Order of November 27, 2006, the name of Defendant Gloucester County Public Schools was changed to the School Board of Gloucester County.  See infra at 4.

herein, the court **GRANTS** Defendants' motion to dismiss, and **DENIES** Walton's motion for leave.

## I.  Factual and Procedural History

On November 18, 2003, Walton filed a charge of discrimination with the Virginia Council on Human Rights and the Equal Employment Opportunity Commission ("EEOC") against Gloucester County Public Schools ("GCPS").  Walton alleged that between May 23, 2002, and September 2, 2003, GCPS had repeatedly denied her applications for teaching positions, as well other related positions, despite the fact that she was an experienced and qualified teacher.  She further alleged that in denying her applications for employment, GCPS discriminated against her on the basis of age and/or race. EEOC concluded that sufficient evidence existed to indicate that Walton was denied employment because of her race, and offered a conciliation agreement to both parties.  That agreement was rejected.  EEOC referred the matter to the Department of Justice, from which Walton received a notice of right to sue on or about March 14, 2006.

On June 9, 2006, Walton brought this action against GCPS, Howard B. Kiser, the superintendent of GCPS ("Kiser"), and the following members of the School Board of Gloucester County: Mr. A. J. McGlohn, Jr.; Mr. Kevin M. Smith; Mr. E. Stanley Belvin, Jr.; Ms. Ann. F. Burruss; Ms. Ronnie Cohen; and Dr. Jean E. Pugh (collectively, "the individual Board members").  It is not clear

from Walton's complaint whether she is suing Kiser and the individual Board members in their individual capacities or official capacities. Walton avers that she was denied employment by GCPS because of her race.[2] She alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and the Virginia Human Rights Act, as amended, Virginia Code Ann. §§ 2.2-3900 to 2.2-3902 ("VHRA").

On October 26, 2006, Defendants filed an answer and the instant motion to dismiss. In their motion, Defendants ask the court to dismiss the following claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6): Walton's Title VII claims as to Kiser and the individual Board members; and Walton's VHRA claims as to all Defendants. On November 6, 2006, Walton filed a motion for leave, coupled with a memorandum that sets forth Walton's opposition to Defendant's motion. In her motion, Walton asks for leave of court to amend her complaint to clarify that she is suing Kiser and the individual Board members in their official

---

[2]In her complaint, Walton does not describe the role of Kiser and the individual Board members in the hiring decisions that are the subject of Walton's complaint. Virginia law provides that "[t]he supervision of schools in each school division shall be vested in a school board." VA. CODE ANN. § 22.1-28. There is also a division superintendent in each school division. Id. § 22.1-58. The school board appoints the division superintendent. Id. § 22.1-60(A). Virginia law further provides that "[t]he teachers in the public schools of a school division shall be employed and placed in appropriate schools by the school board upon recommendation of the division superintendent." Id. § 22.1-295(A). Thus, the decisions not to hire Walton may have involved Kiser, as well as the School Board of Gloucester County and its members.

capacities. On November 15, 2006, the court received Defendants' rebuttal to Walton's opposition and motion for leave.

On November 27, 2006, this court held an initial pretrial conference. The parties represented to the court that the proper name of Defendant GCPS was actually the School Board of Gloucester County.[3] That same day, the court issued a Scheduling Order that changed the parties' pleadings to indicate the correct name of this Defendant. Accordingly, the court uses the term "Defendants" in this Memorandum Order to refer to Kiser, the individual Board members, and the School Board of Gloucester County ("the School Board").

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint for "failure to state a

---

[3] Because the Virginia Code authorizes the School Board to employ teachers and to sue and be sued, the School Board is the proper Defendant in this action. See VA. CODE ANN. § 22.1-71 (explaining that a school board "is declared a body corporate and . . . may sue, be sued, contract, be contracted with and, in accordance with the provisions of this title, purchase, take, hold, lease and convey school property, both real and personal"); id. § 22.1-295(A) (explaining that "[t]he teachers in the public schools of a school division shall be employed and placed in appropriate schools by the school board upon recommendation of the division superintendent"); see also Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988) (explaining that a college's board of trustees, rather than the college, was the proper defendant in a Title VII action where Maryland statutes designated the board of trustees as an employer, the board of trustees was legally identical to the college, and the board of trustees, unlike the college, was authorized to sue and be sued).

claim upon which relief can be granted." A district court should not dismiss a complaint under Rule 12(b)(6) "unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005) (internal quotation omitted).

### III. Relevant Provisions of Title VII

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C § 2000e-2(a) (2000). An "employer" is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." Id. § 2000e(b). Only persons who qualify as employers within the meaning of 42 U.S.C. § 2000e(b) are liable under Title VII. Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998). Neither supervisors nor other employees are liable in their individual capacities for Title VII violations. Id. at 178, 180. The inclusion of the term "agent" in Title VII's definition of employer merely establishes "a limit on an employer's liability for

its employees' actions." Id. at 180. It does not provide a basis for imposing liability on a supervisor. Id.

Before bringing a civil action under Title VII, a person must file a timely charge of discrimination with EEOC. Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 848 F.2d 457, 458 n.1 (4th Cir. 1988) (noting that this requirement is a "jurisdictional prerequisite"); see 42 U.S.C. § 2000e-5(f)(1). Once administrative proceedings have ended or attempts at conciliation have failed, a civil action may be brought against the respondent named in the charge. Alvarado, 848 F.2d at 458. This naming requirement puts the charged party on notice of the complaint and provides EEOC with an opportunity to attempt conciliation. Causey v. Balog, 162 F.3d 795, 800 (4th Cir. 1998).

### IV. Analysis

**A. Title VII Claims**

Defendants ask this court to dismiss Walton's Title VII claims as to Kiser and the individual Board members because Title VII does not provide for personal liability against individuals. In the alternative, Defendants argue that the court should dismiss Walton's Title VII claims as to these Defendants because they were not named in the charge of discrimination filed by Walton. Walton counters that she may properly sue Kiser and the individual Board members in their official capacities under Title VII. Walton argues that she was not required to specifically name Kiser and the

6

individual Board members in her charge of discrimination before bringing a claim against them under Title VII. She contends that it was sufficient for her to name only GCPS in her EEOC charge. Finally, Walton asks for leave of court to amend her complaint to clarify that she is suing Kiser and the individual Board members in their official capacities. Defendants note that such an amendment would be futile because Walton's claims against these Defendants in their official capacities would be duplicative of her claim against the School Board.

Walton's complaint does not specify whether she is suing Kiser and the individual Board members in their individual capacities or official capacities. For the purposes of the instant motion to dismiss, the court assumes that Walton named Kiser and the individual Board members in both their individual capacities and their official capacities. This approach is appropriate because, at this early stage of the proceedings, the court would certainly grant Walton leave to amend her complaint to properly specify the capacity in which she is suing these Defendants, as long as such an amendment would not be futile. See FED. R. CIV. P. 15(a), (c).

In light of the Fourth Circuit's interpretation of Title VII in Lissau, Walton cannot maintain Title VII claims against Kiser and the individual Board members in their individual capacities. Only persons who are employers within the meaning of 42 U.S.C. § 2000e(b) are liable under Title VII. Lissau, 159 F.3d at 180-81.

7

Walton has not alleged that Kiser or any of the individual Board members were her employer. See Pl.'s Compl. ¶ 6 (averring that GCPS was Walton's employer within the meaning of 42 U.S.C. § 2000e(b)). In any event, because Walton failed to name Kiser and the individual Board members in her charge of discrimination, she cannot seek to hold them personally liable in this civil action. See Causey, 162 F.3d at 800-01.

However, this court's ruling that Walton cannot bring claims against Kiser and the individual Board members in their individual capacities does not necessarily preclude Walton from asserting claims against them in their official capacities. The Supreme Court has explained that while individual capacity suits seek to impose personal liability on an individual, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (internal quotation omitted). An official capacity suit "is not a suit against the official personally, for the real party in interest is the entity." Id. at 166. "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Id.

In the instant case, the School Board received notice of Walton's claims and was afforded an opportunity to respond. See

Defs.' Mem. in Supp. of Mot. to Dismiss at 1 n.1 (explaining that counsel for Defendants filed responsive pleadings on behalf of both the Defendants named in Walton's complaint and the School Board). Thus, Walton's claims against Kiser and the individual Board members in their official capacities are, for all intents and purposes, claims against the School Board. See supra note 2 (explaining that a school division's superintendent is appointed by its school board, and describing the superintendent's role in the hiring decisions made by the school board); Pl.'s Mem. in Supp. of Pl.'s Opp'n at 4 (explaining that Kiser is an agent of the School Board); Graham, 473 U.S. at 165 (explaining that an official capacity suit is simply another way of pleading an action against the entity of which the officer is an agent). And by naming GCPS in her charge of discrimination, Walton complied sufficiently with Title VII's administrative prerequisites for her to bring a civil action against Kiser and the individual Board members in their official capacities. See Causey, 162 F.3d at 800-01 & n.1 (concluding that individual defendants who were not named in the plaintiff's EEOC charge could not be held personally liable under Title VII, but assuming, without deciding, that these defendants could be sued in their official capacities); Alvarado, 848 F.2d at 460-61 (allowing the plaintiff to maintain Title VII claims against a college president in his official capacity, despite the fact that he was not named in the EEOC charge). The real party in interest

in this case, even with respect to Walton's official capacity claims, is the School Board, and the School Board received notice of Walton's EEOC charge. <u>See</u> Defs.' Rebuttal Mem. at 5 n.2 (conceding that the School Board and its members, in their official capacities, were "properly placed on notice for purposes of fulfilling the administrative prerequisites of Title VII").

Nevertheless, Walton may not maintain Title VII claims against Kiser and the individual Board members in their official capacities for the simple reason that such claims are duplicative of her Title VII claim against the School Board. <u>See</u> <u>Love-Lane v. Martin</u>, 355 F.3d 766, 783 (4th Cir. 2004) (reasoning that it was appropriate to dismiss a claim against a superintendent in his official capacity where the claim was duplicative of a claim against the entity that employed him). For the same reason, the court **DENIES** Walton's request for leave to amend her complaint to clarify that she is suing Kiser and the individual Board members in their official capacities. <u>See</u> <u>In re PEC Solutions, Inc. Sec. Litig.</u>, 418 F.3d 379, 391 (4th Cir. 2005) (explaining that when an amendment would be futile, a district court need not grant leave of court to allow it).

**B. VHRA Claims**

Defendants argue that the court should dismiss Walton's VHRA claims as to Kiser and the individual Board members because the VHRA does not provide for liability against individuals. They

further argue that the court should dismiss Walton's VHRA claim against the School Board because only employers with fewer than fifteen employees are subject to liability under the VHRA. Walton does not contest either of these arguments, and agrees that federal courts in this jurisdiction have held that the VHRA does not apply to employers with fifteen or more employees.

The VHRA does not create a private cause of action, except under the conditions set forth in section 2.2-2639(B) and (C) of the Virginia Code. Blankenship v. City of Portsmouth, 372 F. Supp. 2d 496, 500-01 (E.D. Va. 2005); see VA. CODE ANN. § 2.2-2639(A). Section 2.2-2639(B) prohibits an employer with more than five but less than fifteen employees from discharging an employee based on race. The VHRA does not create a cause of action against an individual who is not an employer within the meaning of that section. Collins v. Franklin, 142 F. Supp. 2d 749, 751 (W.D. Va. 2000). Section 2.2-2639(C) sets forth the administrative prerequisites for bringing a civil action.

In this case, Walton cannot maintain her VHRA claim against the School Board because it is clear that the School Board has at least fifteen employees. See Pl.'s Compl. ¶ 6 (averring that GCPS is an employer within the meaning of 42 U.S.C. 2000e(b)); 42 U.S.C. § 2000e(b) (defining an "employer" as a person with fifteen or more employees); see also Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 1 (where Walton stated in her charge of discrimination that GCPS

11

employed more than 100 employees). Also, she cannot maintain her VHRA claims against Kiser and the individual Board members because only persons who are employers within the meaning of section 2.2-2639(B) are liable under the VHRA. See Collins, 142 F. Supp. 2d at 751. Walton has not alleged that either Kiser or the individual Board members are employers. In any event, this case does not involve the discharge of an employee. See Huizenga v. Am. Int'l Auto. Dealers Ass'n, No. 05-264, 2005 WL 3132451, *9 (E.D. Va. Nov. 22, 2005) (explaining that "the [VHRA] applies only where there has been a discharge"). Accordingly, Walton's VHRA claims are **DISMISSED**.

### V. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**. Walton's Title VII claims are **DISMISSED** as to Kiser and the individual Board members. Walton's VHRA claims are **DISMISSED** as to all Defendants. Also, Walton's motion for leave is **DENIED**. Therefore, the only remaining claim in this lawsuit is Walton's Title VII claim against the School Board. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to counsel for Plaintiff and Defendants.

**IT IS SO ORDERED.**

                                                    /s/
                                          Rebecca Beach Smith

Norfolk, Virginia

December 4, 2006